Grafton, }
Jan. 3, 1905. }

SIROIS *v.* HENRY *&* a.

A servant does not assume the risk of dangers of his employment which are unknown to him and which ordinary care on his part would not have disclosed.

In an action for negligence against a master, evidence that the plaintiff's work upon dangerous machinery necessitated the use of signals, and that without his knowledge other servants were directed to do work requiring signals which were mistaken for those adopted for the plaintiff's protection, warrants a finding that the defendant was negligent in his failure to inform the plaintiff of the unknown danger and to make reasonable provision for the conduct of the business in view of the added peril.

If injury to a servant results from the coöperating negligence of a fellow-servant and the master, the latter is liable therefor.

CASE, for negligence. Trial by jury and verdict for the plaintiff. The defendants' motions for a nonsuit and the direction of a verdict in their favor were denied, and they excepted. Transferred from the May term, 1904, of the superior court by *Stone,* J.

The plaintiff was a carpenter and had done some work as a millwright. He entered the employment of the defendants June 26, 1903. On August 16, 1903, Belland, the boss millwright, directed the plaintiff, Belmore, and Thibedeau to repair a carrier or bucket elevator in the defendants' mill. The carrier stood in the digester room, against the division wall separating that room from the wood room. In this wall and about ten feet to the left of the carrier was a door leading into the wood room. In the wood room and twenty feet to the left of the door was a friction clutch by which the power was applied to or released from the carrier. The wood room floor was six or seven feet above that of the digester room. Steps lead from the floor of the latter room to the wood room. The carrier ran from the bottom to the top of the digester room, was from sixty-five to seventy-five feet high, and was composed of two parallel chains, twenty inches apart, which ran over sprocket wheels. Wooden buckets, fourteen to twenty inches apart, were bolted to these chains. The carrier was enclosed in sheathing and was reached through a door in the sheathing near the bottom, and here the plaintiff had to work in repairing the buckets.

The plaintiff's evidence tended to show that the only instructions given the three men were that the plaintiff should take two wrenches, tighten the loose bolts that held the buckets to the chains, and if any bolts were missing insert new ones; that Belmore was to stand at the clutch and apply and release the power when it was necessary to start or stop the carrier; and that Thibedeau was to transmit word from the plaintiff to Belmore when to start and stop the carrier. These men began this work about half past one in the afternoon. At first Thibedeau transmitted the signal to Belmore from a place where Belmore could not see him; but later, men having come into the wood room to do other work, Belmore told him to show himself when he gave him the signal. From his position at the clutch Belmore could not see the plaintiff, nor could the plaintiff see him. When Thibedeau stood on a platform near the door or in the door, he could not see the plaintiff at work on the buckets, but he could if he stood back from the carrier. When Thibedeau was in the wood room where he could see Belmore he could not see the plaintiff, but could hear him signal. In giving the signal to start and stop the carrier, the plaintiff would call out " go ahead " or " all right," and Thibedeau would repeat the call or raise his hand. The plaintiff did not know how Thibedeau transmitted the signal.

About three o'clock in the afternoon two steam-fitters, Morrison and Thompson, were sent to work on a steam-drum at the top of the digester room, forty or fifty feet above where the plaintiff was

at work. The plaintiff, Thibedeau, and Belmore could not see the steam-fitters and did not know they were at work in the digester room, and the steam-fitters could not see the plaintiff and did not know he was at work there. When the plaintiff was at work his head and arms were inside the casing to the carrier. Just before the accident occurred, Thompson came down to the floor of the digester room to close the drips and signal Morrison when they were closed, so that the latter could turn the steam on the drum. Having closed the drips, he called out " all right " to Morrison. When he did this he was about equidistant from Morrison and the door leading to the wood room. Thibedeau, who was then in the wood room, heard the signal, and supposing it was given by the plaintiff, raised his hand for Belmore to apply the power to the carrier. Belmore applied the power, and the buckets caught and injured the plaintiff, who was then at work with his head and arms inside the casing.

The plaintiff knew that Thibedeau and Belmore were to assist him in starting and stopping the carrier in the way described, and that he would be injured if they negligently started the carrier while he was at work tightening the bolts. He knew that other men were engaged that day in making repairs in the mill, but he did not know that any were at work in the digester room, or that their work was of a nature requiring the use of signals which might be mistaken for his.

*Eastman & Hollis* and *Thomas H. Madigan, Jr.*, for the plaintiff.

*Alvin F. Wentworth,* for the defendants.

BINGHAM, J. 1. A servant does not assume the risk of dangers that are unknown to him and of which he would not have learned by the exercise of ordinary care. *Henderson* v. *Williams,* 66 N. H. 405.

Notwithstanding the plaintiff admitted that he knew other men besides those associated with him in repairing the carrier were at work making repairs in the mill on the day of the accident, his evidence tended to prove that he did not know any of them were at work in the digester room, or that their work was of a nature calling for the use of signals which might be mistaken for his. Hence it cannot be said as a matter of law that the plaintiff assumed the risk of injury from such a cause. It was for the jury to say whether he knew, or in the exercise of ordinary care should have known and appreciated the danger, and assumed the risk of injury therefrom. *Slack* v. *Carter.* 72 N. H. 267 ; *Kasjeta* v. *Company, ante,* p. 22.

2. A master is bound to provide such reasonable rules and regulations for the conduct of his business, and to give such instructions, as will enable his servants to do their work in safety. If ordinary care in the conduct of his business requires that he should provide such rules and regulations and give such instructions, then his duty arises. *McLaine* v. *Company*, 71 N. H. 294, 297.

That the work in which the plaintiff was engaged at the time he received his injuries was dangerous and of such a nature as to require reasonable rules and instructions for the guidance of the plaintiff and his associates in the performance of their duties, cannot be doubted. The defendants did not contest this question at the trial. Their contention there was that adequate instructions were given the men and, had they been followed, that the accident would not have happened. The plaintiff, on the other hand, contended and introduced evidence tending to prove that no instructions were given; that the men in the course of their work made use of two methods of signaling for the carrier to start and to stop —one by calling out "go ahead" or "all right," the other by raising the hand; that the former was used by the plaintiff in signaling to the middleman, and the latter by him in signaling to the man at the clutch; that in this way the work proceeded with reasonable safety until the defendants, without the knowledge of the plaintiff and his associates, introduced a new element of danger by sending other men into the digester room to do work which required the use of signals, and who, in ignorance of the plaintiff's dangerous situation, gave a signal that was mistaken for a signal from the plaintiff. From this evidence the jury could find that the defendants were negligent in not informing the plaintiff of this new and unknown danger and in failing to make some reasonable provision for the conduct of the work in view of this added peril.

If the evidence warranted a finding that the middleman was negligent in not first ascertaining whether the plaintiff was out of the carrier before giving the signal to start, so that the defendants' negligence was not the sole cause of the accident, nevertheless the jury would be warranted in finding that their negligence was a coöperating cause, for which they would be responsible, the plaintiff being in the exercise of due care. "The master is liable for an injury to his servant caused by negligence of the master coöperating with negligence of a fellow-servant, the injured servant being in no fault." *Matthews* v. *Clough*, 70 N. H. 600.

*Exceptions overruled.*

All concurred.